IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| SHENIQUA L. WATSON,<br>    Plaintiff,<br><br>v.<br><br>VIRGINIA DEPARTMENT OF<br>AGRICULTURE AND CONSUMER<br>SERVICES,<br>    Defendant. | Civil Action No. 3:16cv985 (MHL) |

**REPORT & RECOMMENDATION**
**On Defendant's Motion to Dismiss Plaintiff's Amended Complaint**

Sheniqua L. Watson ("Watson") brings this action *pro se* against the Virginia Department of Agriculture and Consumer Services ("VDACS") asserting numerous claims for "race discrimination, retaliation, unequal/unfair pay, slander/libel and unfair/wrongful demotion." (Amended Complaint at 1, ECF No. 3.) Based on a liberal reading of the Amended Complaint, the Court interprets Watson's Amended Complaint as pleading one Virginia defamation claim, and multiple claims for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"). This matter comes before the Court pursuant to 28 U.S.C. § 636(b)(1)(B) for a Report and Recommendation on Defendant's Motion to Dismiss Plaintiff's Amended Complaint ("Motion to Dismiss") (ECF No. 6) under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Order, ECF No. 9.) Having considered the parties' briefs, and for the reasons discussed below, the Court RECOMMENDS that Defendant's Motion to Dismiss be GRANTED.

1

## I. BACKGROUND

As required by Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts as true Watson's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to her. *T. G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The Court's analysis at this stage is informed and constrained by the four corners of the Amended Complaint. *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009). Applying these standards, the facts are construed as follows for the purpose of resolving the Motion to Dismiss.

### A. Summary of the Allegations in the Amended Complaint

In May 2005, Watson, an African American female, began employment with VDACS as an Administrative Assistant. (Amended Complaint at 1, ECF No. 3.) In April 2009, she became a full time Certification Specialist in the Office of Pesticide Services. (*Id.*) She applied and interviewed for a Registrations Analyst position in January 2013 but VDACS did not offer it to her. (*Id.* at 2.)

Watson alleges that as a Certification Specialist, VDACS intentionally instructed support staff not to assist her. (*Id.* at 1.) Watson claims her Caucasian predecessor received support from multiple staff members, inapposite from the treatment she received in the position. (*Id.*) She also claims VDACS retaliated against her when she inquired about several issues concerning her employment, including the aforementioned lack of support, her salary amount, and an incident with another employee. (*Id.*)

In her Amended Complaint, Watson states that she received "contributor ratings" on her 2013 performance evaluation but does not define what these ratings are. She also admits that her

performance contained negative comments in every core responsibility section and included that "[Watson] bought [sic] down the morale of the team." (*Id.*)

Watson claims that VDACS permitted one of its employees to "falsely accuse [Watson] of making her feel uncomfortable and threatening her. She asked for her seat to be moved, but instead decided to move [Watson's] seat away from the rest of [Watson's] co-workers before telling [Watson] about the accusations." (*Id.*) Watson states that she brought the incident to VDACS's attention, which validated her claim but did not offer her "due process." (*Id.*) On January 13, 2014, Watson transferred to the Office of Charitable and Regulatory Programs as a Registrations Analyst after filing a grievance requesting said transfer. (*Id.* at 1–2.)

Watson maintains that from January 13, 2014 to October 21, 2014, her supervisor, Michelle Townsend, never had occasion to write her up. (*Id.* at 2.) On October 22, 2014, Townsend called Watson into her office for an evaluation. (*Id.* at 1.) Townsend informed Watson that she was not meeting the "50 a week registration processed goal," but applauded her records management. (*Id.*) Townsend indicated that Watson's tasks were being adjusted in her employee work profile, and Watson perceived that the new profile described a receptionist position previously held by wage workers. (*Id.*) Watson's responsibilities changed, but her title and salary remained the same. (*Id.* at 2.) She expressed to Townsend and management, both verbally and in a written grievance, that this change "was a demotion and . . . beneath [her] experience and education level." (*Id.*) Watson maintains that the Registrations Analyst position was never contingent on the number of registrations processed, and most of the other Registration Analysts did not process fifty registrations every week. (*Id.*)

Watson claims that once she opposed the demotion and filed a grievance, Townsend began to retaliate against Watson and micromanage her work. (*Id.*) In December 2014,

3

Townsend wrote Watson up in a "counseling memo" for turning in delinquent timesheets "a few times." (*Id.*) Additionally, on February 20, 2015, Townsend emailed Watson and threatened to take "formal disciplinary action" because Watson failed to return voicemail messages in a timely fashion. (*Id.*)

In February 2015, Watson alleges that she filed a formal Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* at 5.) The EEOC Charge alleged race discrimination and retaliation, listing the earliest instance of discrimination on October 22, 2014, and the latest instance of discrimination on March 4, 2015. (Defendant's Brief in Supp. Mot. Dismiss Ex. 1, ECF No. 7-1.)[1] Moreover, Watson claimed she was denied comparable wages and demoted because of her race, and her supervisor retaliated against her because she had filed grievances with management. (*Id.*) Watson received a right to sue letter from the EEOC dated September 28, 2016. (Amended Complaint at 5, ECF No. 3.)

## B. Relevant Procedural History

On December 15, 2016, Watson filed her Complaint and a Motion for Leave to Proceed *in Forma Pauperis*. The action was assigned to United States District Judge M. Hannah Lauck. (ECF No. 1.) On February 9, 2017, Judge Lauck granted her motion and directed the Clerk to file Watson's Amended Complaint. (ECF No. 3.)

Watson submitted both her Complaint and Amended Complaint in narrative form, lacking enumerated paragraphs or citations to any law. (ECF Nos. 1, 3.) Specifically, Watson states that she is bringing suit against VDACS for "race discrimination, retaliation, unequal/unfair pay,

---

[1] When a plaintiff fails to introduce a pertinent document as part of her complaint, the defendant may attach the document to a motion to dismiss the complaint, and the court may consider the document without converting the motion into a motion for summary judgment as long as the document's authenticity is unquestioned. *Witthohn v. Federal Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citing *Gasner v. Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)).

4

slander/libel and unfair/wrongful demotion."[2] In her Amended Complaint, Watson does not specify the type of relief she seeks from the Court.

On March 2, 2017, VDACS filed the instant Motion to Dismiss and its Brief in Support. (ECF Nos. 6, 7.) On March 23, 2017, Watson filed a Brief in Opposition to the Motion to Dismiss (ECF No. 8), and on March 29, 2017, VDACS filed its Rebuttal Brief (ECF No. 9).

On October 2, 2017, Judge Lauck issued an Order referring the Motion to Dismiss to the undersigned for Report and Recommendation. (ECF No. 10.) The Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). The motion has been fully briefed and is ripe for review.

## II. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Subject-Matter Jurisdiction

In a motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenging the Court's subject-matter jurisdiction, the burden rests with the plaintiff, as the party asserting jurisdiction, to prove that federal jurisdiction is proper. *See Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). A motion to dismiss pursuant to Rule 12(b)(1) can attack subject-matter jurisdiction in two ways. First, a Rule 12(b)(1) motion may attack the complaint on its face, asserting that the complaint fails to state a claim upon which subject-matter jurisdiction can lie. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a challenge, a court assumes the truth of the facts alleged by the plaintiff, thereby functionally affording the plaintiff the same

---

[2] The Court considers Watson's "unfair/wrongful demotion" allegation in the context of Title VII race discrimination and retaliation claims. Watson's "unequal/unfair pay" allegation is also considered within Title VII race discrimination.

5

procedural protection he or she would receive under Rule 12(b)(6) consideration. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

A Rule 12(b)(1) motion may also challenge the existence of subject-matter jurisdiction in fact, apart from the pleadings. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a case, because a party challenges the court's "'very power to hear the case,'" the trial court is free to weigh evidence to determine the existence of jurisdiction. *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *See id.*; *see also Adams*, 697 F.2d at 1219.

If the facts necessary to determine jurisdiction are intertwined with the facts central to the merits of the dispute, the proper course of action is for the court to find that jurisdiction exists and then to resolve the factual dispute on the merits, unless the claim is made solely for the purpose of obtaining jurisdiction or is determined to be wholly insubstantial and frivolous. *Bell v. Hood*, 327 U.S. 678, 682–83 (1946); *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999); *Adams*, 697 F.2d at 1219.

### B. Motion to Dismiss for Failure to State a Claim

"In all civil cases, *pro se* or otherwise, a motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of a Complaint." *Mullins v. Wells Fargo Bank, N.A.*, No. 3:176cv841, 2017 WL 1202656 at *3 (Mar. 30, 2017) (citing *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 338 (4th Cir. 2006)). Courts should assume the veracity of all well-pleaded

allegations in the Complaint and deny a motion to dismiss where those allegations state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim is plausible when the plaintiff pleads facts sufficient to permit the court to draw a reasonable inference that the defendant is liable for the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). However, the court should grant a motion to dismiss where the allegations are purely legal conclusions or do not permit a court to infer more than a possibility of misconduct. *Iqbal*, 556 U.S. at 678–79.

While a court must typically construe a *pro se* plaintiff's pleadings liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), it is not required to accept a *pro se* plaintiff's legal conclusions that are presented as factual allegations. *Twombly*, 550 U.S. at 555. A court should also refuse to accept "unwarranted inferences, unreasonable conclusions, or arguments" as facts. *E. Shore Mkts., Inc. v. T.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

Fed. R. Civ. P. 15(a)(2) states that "a party may amend its pleading only with the opposing party's written consent or the court's leave. Courts should freely give leave when justice so requires." "[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Djenasevic v. Dep't of Justice*, No. 16-6085, 2016 WL 4120669, at *1 (4th Cir. Aug. 3, 2016) (quoting *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

### III. DISCUSSION

As an initial matter, the Court notes that Watson's Amended Complaint fails to comport with the procedural requirements of Rules 8(a) or 10(b) of the Federal Rules of Civil Procedure. Rule 8(a) of the Federal Rules of Civil Procedure requires a pleading that states a claim for relief

to contain: "(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." Similarly, Rule 10(b) requires that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."

The Amended Complaint fails to meet multiple federal pleading requirements. It is a meandering narrative that does not organize Watson's allegations into cognizable counts or claims, in violation of Federal Rules of Civil Procedure 8(a) and 10(b). Rather, the Amended Complaint appears written as a request to the Court to file a complaint rather than a formal pleading. Watson does not identify the grounds for the Court's jurisdiction in a short and plain statement. Nor does she include a demand for relief. Watson fails to identify a particular law that VDACS violated. Altogether, the Amended Complaint epitomizes a "shotgun pleading" that "fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading." *SunTrust Mortg., Inc. v. Old Second Nat'l Bank*, No. 3:12cv99, 2012 U.S. Dist. LEXIS 65932 at *9 (W.D. Va. May 10, 2012) (*quoting Lampkin-Asam v. Volusia County Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008)) (additional citations omitted).

Nonetheless, the Court strains to identify several cognizable claims in the Amended Complaint in the spirit of the Supreme Court's instruction to liberally construe *pro se* pleadings. In her Amended Complaint, Watson states, "I would like to file a race discrimination, retaliation, unequal/unfair pay, slander/libel and unfair/wrongful demotion lawsuit against [VDACS]." (Amended Complaint 1, ECF No. 3.) Construing Watson's claims liberally, the Court evaluates the following claims in the Amended Complaint on the adequacy of the pleadings under the

plausibility standard of *Iqbal* and as to whether the Court has subject-matter jurisdiction: (1) Virginia common law defamation; (2) Title VII race discrimination; and (3) Title VII retaliation.[3]

### A. Defamation

Watson bases her claims for "libel/slander" on allegations that management in the Office of Pesticides encouraged an employee "to falsely accuse me of making her feel unconformable and threatening her." (Amended Complaint at 1, ECF No. 3.) These allegations occurred sometime prior to January 13, 2014, when VDACS transferred Watson to the Office of Charitable and Regulatory Programs after Watson requested the transfer in a grievance she filed related to the incident. (*Id.*)

In Virginia, a defamation claim, such as libel or slander, must be brought within one year after the cause of action accrues. Va. Code Ann. § 8.01-247.1. Watson's defamation claim accrued on January 13, 2014 at the latest. The statute of limitations for that claim expired on January 13, 2015. However, Watson's Amended Complaint was filed on February 9, 2017. Even if the Court relates Watson's filing date back to that of the original Complaint filed on December 15, 2016, her defamation claim was filed more than one year past the limitations period. Accordingly, to the extent that Watson brings a defamation claim against VDACS, it is time-barred, and the Court RECOMMENDS that the defamation claim be dismissed with prejudice.

---

[3] Watson alleges she is bringing her claims under the Virginia Human Rights Act ("VHRA"), Va. Code Ann. § 2.2-3900, *et. seq.* (Plaintiff's Response to Mot. Dismiss at 2, ECF No. 8.) However, Watson is unable to bring a cause of action under the VHRA for two reasons. First, the VHRA only creates a cause of action against an employer with more than five but fewer than fifteen employees. Va. Code Ann. § 2.2-3903(B). Not only has Watson failed to show that VDACS satisfies this requirement, (*see* Plaintiff's Response to Mot. Dismiss at 2, ECF No. 8), but VDACS alleges it employs more than fifteen people. (Rebuttal Brief in Supp. of Defendant's Mot. Dismiss at 3, ECF No. 9.) Second, the VHRA only applies if the employer, who meets the statutory requirements, discharges the employee. Va. Code Ann. § 2.2-3903(B). Watson claims demotion rather than termination. (Amended Complaint 1, ECF No. 3.) The Court notes that the Amended Complaint may contain claims under the Equal Pay Act. To establish a claim of discrimination under the Equal Pay Act, the plaintiff must show that an employer paid different wages to employees of opposite sexes for "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1); *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 343 (4th Cir. 1999). Watson's unequal pay allegations appear to be based on race. Accordingly, the Amended Complaint fails to state a claim under the Equal Pay Act, and to the extent Watson alleges an Equal Pay Act claim, the Court recommends that such a claim be dismissed with prejudice.

### B. Title VII Claims

#### i. Subject-Matter Jurisdiction

VDACS challenges Watson's Title VII claims in the Motion to Dismiss for lack of subject-matter jurisdiction on theories of Eleventh Amendment sovereign immunity and failure to exhaust administrative remedies. The Court addresses each of VDACS's theories in kind.

VDACS asserts that, to the extent Watson alleges Title VII claims, it is immune from suit under Eleventh Amendment sovereign immunity. "[I]t is well settled that the Eleventh Amendment bars a suit by private parties to recover money damages from the state or its alter egos acting in their official capacities." *Huang v. Board of Governors of Univ. of N. Carolina*, 902 F.2d 1134, 1138 (4th Cir.1990). However, the Eleventh Amendment bars claims against the state unless Congress has "abrogate[d] the [s]tates' Eleventh Amendment immunity . . . by stating unequivocally its desire to do so and only pursuant to a valid exercise of constitutional authority." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 484 (4th Cir. 2005) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996)). In *Stewart, Jr. v. Virginia Commonwealth Univ.*, the Fourth Circuit explained that "the Supreme Court [of the United States] has held that, in enacting Title VII, Congress properly abrogated the states' Eleventh Amendment immunity for such suits." 414 F. App'x, 555, 556 (4th Cir. 2011) (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456–57 (1976)). As Congress abrogated Eleventh Amendment protections for Title VII claims, the Court finds VDACS's sovereign immunity defense does not apply to Watson's Title VII claims.

VDACS also asserts that the Court lacks subject-matter jurisdiction over Watson's Title VII claims because Watson failed to exhaust administrative remedies available to her through the Equal Employment Opportunity Commission ("EEOC"). Prior to filing suit under Title VII, a

plaintiff is required to file a charge with the EEOC and exhaust her administrative remedies. *Bryant v. Bell Atl. Md, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). An employee challenging an employment practice of an employer in Virginia has three hundred days from the last date of alleged discrimination to file a charge with the EEOC. *See Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 (4th Cir. 2002). "The scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents." *Tonkin v. Shadow Mgmt., Inc.*, 605 F. App'x, 194, 194 (4th Cir. 2015) (citing *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009)). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Id.* (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)). After receiving a right to sue letter following a determination from the EEOC regarding her charge, the plaintiff has ninety (90) days to file a lawsuit under Title VII. (Dismissal and Notice of Rights, ECF No. 1-3.)

In her Amended Complaint, Watson alleges that she filed a Charge of Discrimination with the EEOC in February 2015.[4] (Amended Complaint 5, ECF No. 3.) Her EEOC Charge alleged discrimination based on race and retaliation. (Defendant's Brief in Supp. Mot. Dismiss Ex. 1, ECF No. 7-1.) The EEOC sent Watson a right to sue letter dated September 28, 2016, and Watson filed her original Complaint within the prescribed ninety-day period. (*Id.*) To the extent that Watson alleges Title VII claims in her Amended Complaint, they are limited to the scope of the initial EEOC charge.[5] Accordingly, the Court finds that it has subject-matter jurisdiction over Watson's Title VII claims for race discrimination and retaliation because she has demonstrated that she exhausted her administrative remedies as to such claims. *See* Jones, 551 F.3d at 300.

---

[4] Watson actually filed the charge with the EEOC on March 4, 2015. (Defendant's Brief in Supp. Mot. Dismiss Ex. 1, ECF No. 7-1.)

[5] *See supra* note 2.

11

### ii. Failure to State a Claim

In the Motion to Dismiss, VDACS also asserts that Watson fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) as to Title VII race discrimination and Title VII retaliation. The Court addresses Watson's claims individually.

### a. Race Discrimination

Title VII prohibits an employer from "discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a). When asserting a claim of employment discrimination under Title VII, a plaintiff may prove his or her claim through direct or circumstantial evidence. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99–100 (2003); *see Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004). "Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and[,] (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010).

Watson alleges that she was denied fair wages and demoted because of her race. (Amended Complaint 1–2, ECF No. 3.) As an African American, (*id.* at 1), Watson is a member of a protected class. She alleges that she was demoted in October 2014, when her job title and salary remained the same but her job responsibilities changed. (*Id.* at 1–2.) Assuming without deciding that Watson's change in responsibilities constitutes an adverse employment action, Watson nonetheless fails to properly plead facts showing satisfactory job performance.

To show satisfactory job performance to support a Title VII race discrimination claim, Watson must demonstrate that at the time of the alleged adverse employment action, she

performed in a way that met the legitimate expectations of VDACS. *See Pettis v. Nottoway Cnty. Sch. Bd.*, 980 F. Supp. 2d 717, 725 (E.D. Va. 2013) (citing *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir.1996); *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980)). However, Watson fails to properly plead facts supporting satisfactory job performance. While she notes that she received all "contributor" ratings on her 2013 performance evaluation, Watson also indicates that "negative opinions were commented in every core responsibility section." (Amended Complaint 1, ECF No. 3.) These negative comments included that "[Watson] bought [sic] down the morale of the team. (*Id.*) She also alleges that her supervisor informed her that she failed to meet the "50 a week registration processed goal," (*id.* at 1), and she received a February 2015 e-mail reprimanding her for failure to timely respond to voicemail messages. (*Id.* at 2.) Watson has not pled sufficient facts showing she performed in her position in a way that met her employer's expectations; she admits to the opposite in her Amended Complaint.[6] Accordingly, Watson fails to state a plausible Title VII race discrimination claim against VDACS, and the Court RECOMMENDS dismissing this claim with prejudice.

### b. Retaliation

Title VII prohibits employers from "discriminat[ing] against any of [its] employees ... because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To state a claim for retaliation under Title VII, a plaintiff must provide factual allegations showing: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman*, 626 F.3d at 190.

---

[6] The Court need not address the third or fourth elements of Watson's Title VII race discrimination claim because she fails to satisfy the critical second element. *See Holmes v. Bevilacqua*, 794 F.2d 142, 147 (4th Cir.1986) (en banc).

Protected activities fall into two distinct categories: participation or opposition. *See* 42 U.S.C. § 2000e-3(a). Participation occurs when an individual "oppose[s] any practice made an unlawful employment practice" under Title VII. *Id.* "To qualify as opposition activity an employee need not engage in the formal process of adjudicating a discrimination claim . . . . Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).

"An adverse employment action is a discriminatory act which 'adversely affect[s] "the terms, conditions, or benefits" of the plaintiff's employment.'" *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (alteration in original) (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006)). "Conduct short of 'ultimate employment decisions' can constitute adverse employment action." *Id.* at 375–76 (quoting *Von Gunten*, 243 F.3d at 865). However, "[t]he mere fact that a job assignment is less appealing to the employee . . . does not constitute adverse employment action." *Id.* at 376 (citing *Von Gunten*, 243 F.3d at 868). To determine whether there was an adverse employment action, the court must ask whether there was "a decrease in compensation, job title, level of responsibility, or opportunity for promotion." *Id.* Typically, an adverse employment action has been found in cases of "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999). Retaliatory harassment may constitute adverse employment action, provided the plaintiff can show that the harassment was sufficiently severe and pervasive enough to dissuade a reasonable employee from engaging in a

14

protected activity. *Cooper v. City of North Myrtle Beach*, 2012 WL 1283498, at *8 (D.S.C. Jan. 25, 2012).

"A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action [ . . . ] negates any inference that a causal connection exists between the two." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). The longer the time period between the protective activity and the alleged retaliation, the less a court presumes a causal connection. *See Hooven-Lewis v. Caldera*, 249 F.3d 259, 278 (4th Cir. 2001) ("A six month lag is sufficient to negate any inference of causation.") (citation omitted).

VDACS contends that Watson not only failed to plead facts sufficient to show an adverse employment action, but that she failed to show a causal connection. (Def. Brief in Supp. Mot. Dismiss 16, ECF No. 7.) Construing the Amended Complaint liberally, Watson alleges two instances of retaliation: (1) when she was effectively demoted in October 2014 (Amended Complaint 1, ECF No. 3), and (2) when her supervisor began to "micromanag[e]" her work. (*Id.* at 2). The Court addresses each allegation in turn.

First, Watson claims VDACS retaliated against her by effectively demoting her in October 2014. (*Id.* at 1). According to the Amended Complaint, Watson filed a grievance sometime prior to January 13, 2014. (*Id.*) On October 22, 2014, she was informed that while her job title and salary would remain the same, her responsibilities had changed. (*Id.* at 1–2.) Watson claims that her responsibilities downgraded her to those similar to a "desk/receptionist position previously held by wage workers." (*Id.* at 1.) Construed liberally, Watson has satisfied that this change in responsibilities constituted "a decrease in [her] . . . level of responsibility" and was therefore an adverse employment action. *See James*, 368 F.3d at 376.

However, Watson fails to show a causal connection between filing her pre-January 13, 2014 grievance and her October 2014 change in responsibilities. The Fourth Circuit has held that a six-month lag between a protected activity and alleged retaliation is sufficient to negate any inference of a causal connection. *Caldera*, 249 F.3d at 278. Here, aapproximately ten months elapsed between Watson filing her grievance and the alleged demotion. Accordingly, Watson fails to plausibly plead facts to support a Title VII retaliation claim based on the October 22, 2014 alleged demotion.

Watson claims that a second instance of retaliation occurred after her job responsibilities were changed. (Amended Complaint at 2, ECF No. 3.) About two weeks after the alleged demotion, Watson filed another grievance in opposition to the decision. (*Id.*) Watson claims that after she filed the grievance, her supervisor "began retaliating and micro-managing [her] work." (*Id.*) In December 2014, the supervisor wrote up Watson in a "counseling memo" for submitting delinquent time sheets "a few times." (*Id.*) On February 20, 2015, the supervisor threatened to take "formal disciplinary action" against Watson for not returning voicemails in a timely manner. (*Id.*)

The facts alleged in Watson's Amended Complaint are insufficient to show any adverse employment action occurred. Watson does not plead sufficient facts to plausibly show that retaliatory harassment occurred. Reprimands do not constitute "a decrease in compensation, job title, level of responsibility, or opportunity for promotion." *See James*, 368 F.3d at 376. Moreover, the reprimands that Watson alleges as retaliation are equally attributable to the tardiness issues that Watson admits to in her Amended Complaint. Watson fails to allege sufficient facts to bring her Title VII retaliation claim regarding supervisor micromanagement from possible to plausible under the *Iqbal* standard.

In sum, the Court RECOMMENDS dismissing Watson's Title VII retaliation claims with prejudice.

## IV. CONCLUSION

Having considered the Amended Complaint and the parties' briefs, and for the reasons discussed herein, the Court finds that it Watson's defamation claim is barred by the relevant statute of limitations. The Court also finds that Watson's Amended Complaint fails to state a claim for Title VII race discrimination or retaliation.

Accordingly, the Court RECOMMENDS that Defendant's Motion to Dismiss Plaintiff's Amended Complaint be GRANTED and Watson's Amended Complaint be dismissed with prejudice.

The Clerk is directed to file this Report and Recommendation electronically and send a copy to all counsel of record and to the Honorable M. Hannah Lauck, United States District Judge.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal those findings and conclusions accepted and adopted by the District Judge except upon the grounds of plain error.**

/s/
Roderick C. Young
United States Magistrate Judge

Richmond, Virginia
Date: December 22, 2017